My name is David Porter. I'm an Assistant Federal Defender from the Eastern District of California, and I represent the defendant, the appellant, William Franklin Dobrov0lny. The central issue in this case is whether the State Court of Appeal unreasonably applied clearly established Federal law as enunciated in Brady v. Maryland. Now a Brady claim has three elements. The first, whether the evidence was suppressed. There's no dispute about that in this case. The second is whether it's favorable to the defendant. That means whether it's -- it tends to exculpate the defendant or impeaches a government witness. And third, whether it is material. That is, does it put the case in a sufficiently different light to undermine confidence in the verdict? Isn't that the touchstone of this case? I'm sorry? Isn't that the touchstone of this case? I think both two and three, both the favorable to the defendant and materiality. The Court of Appeal seems to be ---- is brought on jail property proper, correct? Yes. And before the jail attendant came out and talked with your client, your client was on jail property with a weapon, correct? Yes. Then how can the jail officer's testimony be material? There are two responses to that. And that's what the impeachment evidence goes to, isn't it? There ---- yes. And it also goes to bias in the motive of testifying and to abuse of power. But the violation of ---- tell me if ---- where I'm off base. But my thinking is that if the statute is violated before your client ever enters the building, then impeachment evidence as to what the guard might say is irrelevant. There are two responses to that, Your Honor. First is our claim that the statute is unconstitutional as applied because it is unconstitutionally vague. And the second is that even if the court doesn't agree with that argument, the jury instructions very clearly said in this case that there are several ways the defendant could have violated the law, and agreement on any of those ways was sufficient to reach a guilty verdict. In conjunction with that, the ---- in accordance with that, the jury rendered a general verdict. So we have no way of knowing which basis the jury found, whether it was because he was sitting on a planter or because of the ---- because of his ---- because he came into the jail, that the jury decided the verdict on. And, therefore, under Griffin and Stromberg and the cases that we've cited in our brief, that decision cannot stand. When you have an unconstitutional theory of liability, that cannot stand. If there are two legally insufficient theories, then we presume that the ---- that the jury correctly decided about the factual basis and where there was sufficient facts to support the verdict. But in this case, we have two bases of liability. Both are being attacked as unconstitutional, the one on the Brady claim and the other that it is unconstitutionally vague as applied. So under Griffin, this verdict cannot stand even if the Court rejects our constitutionally vague argument. The court ---- Roberts. Now, the Brady issue goes to the entrapment defense. Is that correct? I mean, you're saying that he came out and lured your client into the facility. Yes. Yeah. And the court of appeals hung its ---- appeared to hang its hat on the second element of the Brady claim, whether it was favorable to the defendant. They say, well, it wasn't favorable to the defendant. It ---- the court of appeals' entire discussion of the issue is in a single paragraph in its decision. And it plainly misconstrued the extent of Brady on multiple levels. It's quoted on page 12 of our brief, and it says, the bulk of the materials were collected after trial and sentencing. We've examined them, and none of them support the entrapment defense. First of all, collected is not the essential issue under Brady. It's whether it existed and was in possession of the sheriff, not when it was collected. And through Saucedo's testimony at the Anthony trial, he conceded that the sheriff's department knew about this evidence more than a year before his firing. And that predated even the trial in this case. But more importantly, and then we also cited Imbler and Thomas v. Goldstein, that even after verdict evidence, there is a continuing duty for prosecutors to reveal Brady material even after the verdict. But even more importantly, Brady was construed too narrowly by the court of appeals. All the impeachment materials listed at page 10 of our brief, but these materials clearly impeached Saucedo. They were evidence of motive of bias because he was trying to keep his job with the sheriff's department. And they clearly show that he abused his power. And under this Court's decision, 1990 --- 2003 decision in Bailey v. Rowe at 339 Fed 3rd, 1107, the same exact thing happened here. The Court there said, we are troubled by the fact that the Court --- and they're talking about the State court --- did not undertake a careful, balanced evaluation of the nature and strength of both the evidence the defense was prevented from presenting and the evidence each side presented at trial. That's exactly what happened here. They go on to say the State court's analysis of prejudice amounted to little more than a blanket assumption that because the experts' reports were cumulative, they would have had little impact on the trial's outcome. There's a blanket assumption here that it did not go --- it did not support the impeach -- it did not support the entrapment defense. The warden supports the Court of Appeals' decision by saying that, well, this is after trial conduct, and therefore, it's irrelevant to Brady. Also a misunderstanding of Brady. First of all, the government, at page 16 of its brief, offers only one instance of misconduct that they say is after the trial. And we -- and that's irrelevant to the six areas of misconduct that are noted in the proffer. But even if that were the case, those were the one evidence that the piece of evidence that the government cites was after the verdict, but before the judgment and sentencing in this case. And under California law, a motion for a new trial can be made at any time before the judgment is entered. So I think the Court of Appeals was just very clearly wrong in its favor of its examination of the second issue, the second element of Brady. As far as materiality goes, it was very clearly wrong, and so was the district court, which, by the way, did not even look at, did not even bother to get the records from the State court of appeal. And I would quote this Court's 2005 decision in Silva v. Brown that says, We cannot overemphasize the importance of allowing a full and fair cross-examination of government witnesses whose testimony is important to the outcome of this case. Saucedo's evidence was clearly very, very crucial to this case, and the inability of the defense counsel to cross-examine him based on the Brady violation was crucial and undermines the confidence in the verdict in this case. I'll reserve. Roberts. Can we try for a rebuttal? I'll reserve. Okay. Thank you. Good morning, Your Honors. Janine Bush, appearing on behalf of the State. Good morning. First, I'd like to address the Imler-Thomas citations that counsel has made. Imler is not a Brady case. Imler v. Pachman is a case about prosecutorial immunity. And the reference in the case about a prosecutor's duty to continue to disclose evidence is as follows. The possibility of personal liability also could dampen the prosecutor's exercise of his duty to bring to the attention of the court or of proper officials all significant evidence suggestive of innocence or mitigation. At trial, this duty is enforced by the requirements of due process. But after a conviction, the prosecutor is also bound by the ethics of his office to inform the appropriate authority of after-required or other information that casts doubt upon the correctness of the conviction. And that is a citation to ABA standards of responsibility. That is not Brady. That's not even the same standard of materiality. That's like an actual innocence claim. What about the fact that we really would have a pretty simple case with this fellow is sitting on the planter, and he had these two guns on him, and they were concealed. And that was jail property, and he was forbidden to have the guns in jail property. But Mr. Porter says that apparently there was a general verdict here and that it's impossible to tell whether the jury convicted him because he walked into the jail with the guns, or they convicted him because he was sitting on the planter with the guns. What's your response to that? Please don't bite on that, Your Honor, because that — please don't bite on that because that is a, I think, red herring. This — the requirement that the counsel is talking about has to do with a theory which isn't supported under the law. So you'd have to go a number of steps before you got there. First of all, you'd have to say there was insufficient evidence to support a verdict that he wasn't entrapped. And I argue that there's plenty of evidence to support a verdict that he wasn't entrapped. But you can't say there's wrong as long as, under the evidence, the jury's verdict can be supported. Correct. You look at the verdict and the like most favorable to the government, and that's all that's required. Is that correct? That's correct. And, Your Honor, you know — Then other than that, what else is there in this case we need to be concerned about? Well, the — I'm concerned about counsel's characterization of the court of appeals' discussion of the Brady issue. The absence question was what we should be concerned about. The court of appeal, in fact, didn't correctly apply the law in the case. The court of appeal focused on the definition of materiality and whether or not any impeachment would be. And that's a question that's determined by reference to admissibility under State law. And that's what the pages and pages after that were all about. So with that, I think probably the Court has no other concerns. What the statute, the ordinance or statute, prohibits weapons in adjacent to the jail or the — it's — it seems to me it is vague. I'm not sure where — how far that extends. If you're in a field next to the building or — The wording of the statute, Your Honor, is on to jail grounds or adjacent to jail grounds. And in — in this situation, you can't do a — it's a vague as applied challenge is the only challenge that could be made here. And the evidence in this case, the planters are physically attached to the jail wall right outside the doors. And that's what the — the evidence showed. So — so this is not only — not only are the — is the adjacent to actually attached to the jail. It's not like a field a hundred yards away. This is a defendant who's already been in that jail that morning and been let out of it and seen the signs about not bringing weapons into the jail. I mean, this is not an unclear or vague thing for this defendant about what's jail grounds and what are the rules about weapons on the jail — on the jail grounds. Does that answer the Court's question? Well, perhaps. If it's just as an applied challenge, I guess the planters are pretty close to the jail, so maybe we don't have to worry about the field. Thank you, Your Honor. Does the Court have any — But in reality, I suppose he's asserting a defense of entrapment. In other words, I wasn't going to come into the jail, but your answer to that is that he was on the planter, and that's enough, I guess. Well, he was on the planter, and that's enough. And also, the — his defense of entrapment was weakened by other than — more than Justice Sosito's testimony that I didn't say that to him. I mean, first of all, Officer Halk, who, you know, is not under fire here, says that, you know, the desk officers, he and Sosito, have nothing to do about release of — of other prisoners from within. The prisoners come from within, are processed, and then go out two sets of doors outside. And these two officers are sitting in front in the lobby. They're taking questions from people coming in, wanting to visit people, or people wanting to make appointments. So — so — so what Officer Halk and Officer Sosito both talked about was when they get word that a release is going to happen, if somebody's waiting, they'll — they'll do the courtesy of saying, hey, a release is about to happen. And so that's what Officer Sosito said he went out to do. Now, this business about getting a — asking the defendant to come in to get information from him, that is, like, not in the jail protocol at all, and that's according to Officer Halk. So already, it's incredible. It's an incredible sort of defense. And — and with — without reference to Officer Sosito's own testimony about what he said. And then there was also Officer Halk's observations of, you know, from a few feet away, the interaction between the defendant sitting outside and Officer Sosito. Spoke to him a couple moments. He sees Officer Sosito head back into the jail. It appears to Officer Halk — he says this on the stand — that Officer Sosito doesn't even know the defendant is behind him, and he heads on ahead, and he doesn't hold the door for it. He just doesn't appear to — he's oblivious about the defendant's presence. So once again, that supports the idea that Officer Sosito didn't have some sort of, like, come-back-in-with-me interaction. So that's what I would have to say about the evidence on the entrapment, aside from — from Sosito's own testimony. I suppose another — well, I should perhaps ask your opponent about this, but why conceal the knives if you aren't planning to go into the jail? Well, especially an 8- or 10-inch buck knife down your boot, yes. It's not a pocket knife. I think we understand your argument. Thank you very much, counsel. Thank you. And Judge Hawkins corrected me. It's knives that he had, not guns. I was wrong. It was two knives, Your Honor. There was a folding knife in the pocket and then one down — a long knife down the boot. Thank you. Counsel, Ravone. Thank you. Judge Canby, you're correct. Jason is unconstitutionally vague. And in this case, the court of appeal attempted to — to avoid that by attributing special knowledge to Mr. — to Mr. Dobrevolny in saying, well, look at the testimony. He testified he knew the planter was attached to the jail. That's the wrong test. The first — the test is whether a common man understood what does adjacent mean. The second problem with that is, if you look at the testimony at Reporters' Transcript 297 of Mr. Saucedo, the question wasn't, what did you understand at the time this happened? It's — it's — the prosecutor asked him in the present tense, isn't the planter attached to the jail? And so Mr. Dobrevolny says, well, it's attached to the jail. I attached to the public sidewalk. And then Prosecutor Badger asked him some more, well, isn't it attached to the jail? He says, well, yeah, probably so. Well, after he's been accused of it and has been talking to his lawyer and, you know, reflects upon it, that issue is totally different than, at the time, did he understand whether it was adjacent to the jail. So on — on the issue that I think troubles Judge Hawkins the most about the alternative theories of liability, I just would like to stress that the district court also relied on — on Griffin. But Griffin is plainly distinguishable because here both possible bases of conviction rested on assertedly unconstitutional grounds. It's different than when you're saying one — one ground is there's insufficient evidence, and another ground is unconstitutional. We trust the jury in issues of fact, but when the issues become issues of law and justice, this verdict cannot stand. Okay. Thank you for your argument. Thank both sides for the argument. Their case just argued will be submitted for decision.
judges: Canby, Thompson, Hawkins